AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FILED
2009 AUG 24 PM 4: 19
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

vs.

VICTOR CEDENO

**CRIMINAL COMPLAINT**

CASE NUMBER: 6:09-mj-1255

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about July 17, 2009, in Orange County, in the Middle District of Florida, defendant did,

> knowingly utter and possess a forged security of an organization. which operates in or the activities of which affect interstate commerce, with the intent to deceive another person or organization

in violation of Title 18, United States Code, Section 513. I further state that I am a Special Agent with United States Secret Service, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
Charles Johnsten

Sworn to before me and subscribed in my presence,

August 24, 2009                                    at          Orlando, Florida

DAVID A. BAKER
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE OF FLORIDA
COUNTY OF ORANGE                                    Case No. 6:09-mj-1255

## AFFIDAVIT

I, Charles Johnsten, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Secret Service assigned to the Orlando Field Office. Among my duties as a Special Agent, I am charged with the investigation of financial violations, including check fraud, identity fraud, credit card fraud, access device fraud, bank and wire fraud, and the manufacturing, possession, and passing of counterfeit United States currency. I make this affidavit based on my personal knowledge and experience, evidence and facts obtained during this investigation, information provided by other law enforcement officials involved with the investigation, and information obtained by certain bank investigators, as described below.

2. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included details of all aspects of my investigation. Rather, I have set forth only those facts I believe are necessary to establish probable cause that a violation of federal law has been committed by Victor Cedeno (Cedeno), to wit, a violation of 18 U.S.C. § 513.

## INTRODUCTION

3. On August 12, 2009, the United States Secret Service was contacted by James Dooley (Dooley), Senior Investigator at the Navy Federal Credit Union (NFCU), an organization that operates in or the activities of which affect interstate commerce. Dooley informed the Secret Service that he had placed a hold on a "Tailor Bean & W" checking account number ******9765 due to suspicious activity on the account. Lisa Scales (Scales), manager of the Orlando Branch of the NFCU, had contacted Dooley after

receiving a check for deposit for the company "Taylor, Bean & Whitaker." Scales became suspicious of this check because the payee's name on the check, "Taylor, Bean & Whitaker," was different than the name on the account in which the check was being deposited into, which was "Tailor Bean W." In addition, the account holder, Victor Cedeno, was attempting to obtain a cashier's check in the amount of $800,000.00 from the "Tailor Bean W." account.

4. Taylor, Bean & Whitaker is a licensed and insured mortgage lending company, and an organization that operates in or the activities of which affect interstate commerce. From January 3, 2008 until he was fired on August 13, 2009, Cedeno was employed as a Loss Mitigation Negotiator (LMN) in the Loan Resolution Management Department of Taylor, Bean & Whitaker. Taylor, Bean & Whitaker fired Cedeno from the company for suspicion of embezzlement of company funds. As part of his duties as a LMN, Cedeno worked to resolve short sale losses for Taylor, Bean & Whitaker. Cedeno's position with Taylor, Bean & Whitaker placed him in direct contact with realtors, investors, and lenders.

5. As will be described in more detail below, this investigation has revealed that Cedeno defrauded Taylor, Bean & Whitaker and its customers by the uttering and possession of forged securities of an organization whose activities affect interstate commerce, to wit, Cedeno fraudulently endorsed checks intended for his employer and deposited those checks into an account that he controlled.

**OFFENSE CONDUCT**

6. On July 16, 2008, Cedeno began his schemes by opening a bank account with Navy Federal Credit Union under the name "Tailor Bean W." The number for this

account is ******9765. The name "Tailor Whitaker" is signed as the account's primary account holder. However, the printed name contained on the signature card is "Victor Cedeno." Accordingly, there are actually two different names contained on the signature area of the signature card even though there is only one account holder. Victor Cedeno provided the Navy Federal Credit Union with documents showing that he had opened up a business in the name of "Tailor Bean & W" through the South Dakota Secretary of State Business name registration system.

7. After account number ******9765 was opened, Cedeno began depositing checks made payable to his employer, Taylor, Bean & Whitaker, into account number ******9765 in the name of "Tailor Bean & W."

8. Counsel for Taylor, Bean & Whitaker advised the Navy Federal Credit Union that Cedeno was not authorized to take any checks from Taylor, Bean & Whitaker, and deposit them into any account at the Navy Federal Credit Union. Furthermore, Taylor, Bean & Whitaker does not have any accounts at the Navy Federal Credit Union.

9. On July 17, 2008, Victor Cedeno made an initial deposit totaling $3,814.06 from three separate checks made payable to "Taylor, Bean & Whitaker" into account number ******9765. Thereafter, from July 17, 2008, through August 10, 2009, a total of fifty-eight (58) checks made payable to "Taylor, Bean & Whitaker" were deposited into account number ******9765, for a total amount of $1,608,640.34. All of these checks were intended for "Taylor, Bean & Whitaker," the legitimate licensed and insured mortgage lending company, and not "Tailor Bean & W." The only other funds deposited in this account came from a deposit of one check on October 15, 2008 that was made payable to "Victor A. Cedeno" from T-Mobile in the amount of $170.67 and four

wire transfers made between October 15, 2008, and April 22, 2009, totaling $3,941.17 from an internet lending institution by the name of Prosperity Market Place. The account had a balance of $1,012,905.68. These funds have been seized pursuant to a federal warrant.

10. A review of account number ******9765 shows a total of $227,782.89 being transferred into the personal checking account of Victor Cedeno at Navy Federal Credit Union account number ******9258. The first transfer was on March 2, 2009, in the amount of $1,100.00. The second transfer was on March 17, 2009, in the amount of $30,000.00. The last transfer was on June 20, 2009, in the amount of $207,320.56. Genesis Valdez is a joint account holder on this account. Cedeno and Genesis Valdez share the same address, and are believed to have a personal relationship.

11. Between March 2, 2009 and June 20, 2009, an additional three wire transfers were made from account number ******9258 to Escrow LLC d/b/a Loss Mit SunTrust Bank account number *********4071, which totaled $227,782.89. I believe that these transfers were done to further conceal the source and ownership of the stolen funds, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). SunTrust Checking Account #1000090894071 is held by United Escrow LLC d/b/a Loss Mit, and has a total balance of $320,954.84. The sole signatory on the account is Genesis Valdez. On August 14, 2009, a SunTrust Investigator informed the undersigned that Genesis Valdez attempted to wire transfer $320,954.84 from the United Escrow LLC d/b/a Loss Mit to Venezuela.

12. Rito learned through an internal investigation into the mortgage accounts Cedeno was working on, that Cedeno was not reporting the sale of the homes correctly to Taylor, Bean & Whitaker. Rito indicated that Cedeno was provided with guidelines in

which he could authorize short sales of homes, on behalf of Taylor, Bean & Whitaker before having to obtain consent from lenders, such as Fannie Mae or Freddie Mac. According to these guidelines, as long as Cedeno approved the sale of a home for over 80% of its mortgaged value, Cedeno did not have to obtain consent from any lenders. Through his investigation, Rito discovered that while he was approving sales with mortgages for close to ninety (90) percent of the mortgaged value of their properties, Cedeno was reporting to Taylor, Bean & Whitaker that he was approving sales at eighty (80) percent of the mortgaged value.

[handwritten annotation: Those several title companies include Affiliated Title Co. of Marion County, LTD and First Integrity Title Agency LLC of Denver, Colorado, both entities operate in and activities affect interstate commerce.]

13.     Cedeno would then have the title company handling the closing of the old mortgage forward via U.S. mail the payoff check to Taylor, Bean & Whitaker. Cedeno would intercept the payoff check made out for ninety (90) percent of the mortgaged value, and then deposit the check into his account number ******9765. In some cases, Rito observed funds being wire transferred directly from the legitimate title company's account to Cedeno's account number ******9765.

14.     Cedeno would then transfer an amount equal to eighty (80) percent of the homes' mortgaged value into SunTrust account number *********4071, held in the name of United Escrow LLC d/b/a Taylor, Bean & Whitaker Loss Mit., in which Cedeno's girlfriend, Genesis Valdez, was the sole signatory. From this account, either Cedeno or Valdez would issue a check to Taylor, Bean & Whitaker for eighty (80) percent of the homes mortgaged value. Because the check appeared to be coming from a title company, Taylor, Bean & Whitaker did not realize right away that the checks coming to them were not from legitimate title companies.

15.     Cedeno would then keep the ten percent extra he was charging the

mortgages, or any amount over eighty percent of the agreed payoff amount left, in his account. Cedeno would then provide Taylor, Bean & Whitaker with paperwork on the properties that were in short sale, which reflects that a settlement was reached at eighty (80) percent of the mortgaged value. Cedeno's paperwork would match the amount of the payoff check from the fraudulent title company, showing it to be a genuine transfer. After further review of accounts handled by Cedeno, Rito observed that the title company that was actually handling the mortgages during closing was not matching the title company issuing the payoff checks.

16.  Shane Rito, Director of default management for Taylor, Bean & Whitaker, stated Cedeno had no authority during his employment at Taylor, Bean & Whitaker, to cash, deposit, or negotiate any checks intended for Taylor, Bean & Whitaker. Rito stated depositing and handling of all Taylor, Bean & Whitaker checks is the sole responsibility of Taylor, Bean & Whitaker's cashier's group employee, Merry Gray.

**CONCLUSION**

17.  I believes that there is probable cause to believe that Cedeno engaged in violations of 18 U.S.C. § 513, the uttering and possession of forged securities of an organization whose activities affect interstate commerce. The securities were forged due to the fact that they purported to be genuine but were not because they were falsely completed, signed, and endorsed by Cedeno when he had no authority to do such.

Special Agent Charles Johnsten
United States Secret Service

Sworn to and subscribed before me this
24th day of August, 2009.

The Honorable David A. Baker
United States Magistrate Judge